MASON (BRONAUGH v.). See Case No. 1,-
    923.

MASON (CHESAPEAKE & O. CANAL CO.
    v.). See Case No. 2,650.

MASON (CHOMQUA v.). See Case No. 2,-
    693.

## Case No. 9,233.
### MASON v. CLAPP.

[Holmes, 417; [1] 21 Int. Rev. Rec. 208; 7 Leg.
    Gaz. 277.]

Circuit Court, D. Massachusetts. Sept. 3, 1874.[2]

INTERNAL REVENUE—SUCCESSION TAX — LIFE ES-
    TATE—TERMINATED AFTER REPEAL.

1. Under the internal revenue acts of June 30,
1864 [13 Stat. 223], and July 13, 1866 [14 Stat.
98], no succession tax accrued against a devisee
of real estate in fee, after a life estate in another,
until the termination of the life estate.

2. Such tax therefore cannot lawfully be as-
sessed against such devisee where the life estate
began before, and terminated after, the date
fixed for the repeal of the succession tax by the
act of July 14, 1870 (16 Stat. 256), the seven-
teenth section of which provided that the repeal
should not prevent the levy and collection of
"taxes properly assessed, or liable to be assessed,
or accruing under the provisions of former acts,"
and that the act should "not be construed to af-
fect any act done, right accrued, or penalty in-
curred under former acts."

[Cited in United States v. New York Life Ins.
    & Trust Co., Case No. 15,873.]

[This was a suit by William P. Mason
against Otis Clapp for the recovery of tax
claimed to have been paid after the repeal of
the succession tax act.]

Russell & Putnam and J. B. Warner, for
plaintiff.

George P. Sanger, for defendant.

SHEPLEY, Circuit Judge. This is an ac-
tion brought in the state court, and removed
by the defendant to this court by certiorari,
to recover a succession tax paid under pro-
test to defendant as collector of internal
revenue for the Fourth Massachusetts dis-
trict. The writ is dated Nov. 20, 1873.
William P. Mason, the plaintiff's testator,
died Dec. 4, 1867. By his will, the real es-
tate upon which the tax in question was
levied, was devised to his widow for her life,
or until she should cease to occupy the same
as a place of residence, and upon her death
or ceasing so to occupy the same, to the
plaintiff. The widow occupied the said real
estate as her residence until her death, on
June 17, 1872. May 15, 1873, the tax in ques-
tion was assessed by [Jonathan H. Mann,][3]
the assessor of said district; and, May 31,
1873, plaintiff paid defendant said tax under
protest, to avoid distraint or other forcible
process to collect the same. June 9, 1873,
plaintiff duly made claim upon the commis-
sioner of internal revenue for the refunding

[1] [Reported by Jabez S. Holmes, Esq., and
here reprinted by permission.]
[2] [Affirmed in 94 U. S. 589.]
[3] [From 21 Int. Rev. Rec. 268.]

of said tax, for the reason that the said
property did not vest in possession in the
plaintiff until the death of the testator's
widow, which occurred after Oct. 1, 1870, the
date at which the repeal of the succession
tax went into effect, and that the tax had
not accrued at said date so as to come within
the saving clause of the act of repeal. Act
July 14, 1870, § 17 (16 Stat.). Nov. 15, 1873,
the commissioner of internal revenue reject-
ed the appeal, "for the reason that the tax
was due, properly assessed, and collected,"
within said saving clause, "as held by the
circuit court of the United States for the
district of Massachusetts, in the case of May
v. Slack" [Case No. 9,336]. If upon the above
facts the court are of opinion that the tax
was wrongfully assessed and collected, judg-
ment is to be entered for the plaintiff for six
hundred dollars, with interest from May 31,
1873; otherwise judgment for the defendant.

The act of July 14, 1870 (16 Stat. 256), re-
pealed the special tax "on legacies and suc-
cessions" imposed by the internal revenue
act of 1864. This repeal took effect on the
first day of October, 1870. The seventeenth
section of the act of July 14, 1870, provides
that "all acts and parts of acts relating to
the taxes herein repealed, and all the provi-
sions of said acts, shall continue in full force
for levying and collecting all taxes properly
assessed, or liable to be assessed, or accruing
under the provisions of former acts or draw-
backs, the right to which has already accrued
or which may hereafter accrue under said
acts; and for maintaining and continuing
liens, fines, penalties, and forfeitures in-
curred under and by virtue thereof; and this
act shall not be construed to affect any act
done, right accrued, or penalty incurred un-
der former acts, but every such right is here-
by saved."

The tax in this case was not assessed, or
liable to be assessed, before the first day of
October, 1870. It is, however, claimed that
the beneficial interest of the plaintiff having
accrued Dec. 4, 1867, on the death of William
P. Mason, the testator, its liability to the suc-
cession tax or duty, when it became vested
in possession, was saved by the exceptions
of the seventeenth section in relation to
taxes "accruing" and "rights accrued" under
former acts.

Section 126 of the act of 1864 (13 Stat. 287),
defined a "succession" to denote the devolu-
tion of title to any real estate. By the pro-
visions of the succeeding section, "every past
or future disposition of real estate by will,
deed, or laws of descent, by reason whereof
any person shall become beneficially en-
titled, in possession or expectancy to any
real estate, or the income thereof, upon the
death of any person dying after the passing
of this act, shall be deemed to confer on the
person entitled, by reason of any such dispo-
sition, a 'succession,' and the term 'succes-
sor' shall denote the person so entitled."
The duty payable in case of such succession

varied according as the successor's degree of consanguinity was nearer or remote to the predecessor, from one per centum in case of a successor of lineal issue, or a lineal ancestor of the predecessor, to a duty of six per centum in case of a stranger in blood, or one far removed in degree of collateral consanguinity. Provision was also made, that where, before any successor became entitled to the estate in possession, his interest, by reason of death, passed to any other successor, only one duty should be paid, and should be due from the successor who first should become entitled in possession; but such duty should be estimated at the highest rate which, if every successor had been subject to duty, would have been payable by any one of them. The duty was not payable until the successor became entitled in possession. Act 1864, § 137 (13 Stat. 289). By the provisions of section 145, the duty became a lien on the succession after assessment. By the act of July 13, 1866 (14 Stat. 140, 141), the assessment was to be made at the expiration of thirty days after the successor came into possession.

Thus, it will be seen that on the first day of October, 1870, when the repealing act took effect, it was uncertain when any duty was to be paid, upon what value it was to be paid, at what rate of duty it was to be assessed and payable, and against whom it would be assessed. No tax had then accrued or was accruing against William P. Mason. Before any one became entitled in possession, the succession might pass by death, by the laws of descent or otherwise, through many different persons. Although, when a successor became entitled in possession, the duty would have been assessable at the highest rate to which any successor in the line would have been liable had he come in possession, the duty did not accrue against that one or any other of the successors in the line, except the one who became entitled in possession, and not against him until he became so entitled. When he became so entitled in possession, the duty accrued against him; the "right accrued," although the assessment could not be made until the expiration of thirty days. Only one duty accrued against only one successor, however many there might have been in the line of succession. If the successor who became entitled in possession died before the first day of October, 1870, and the thirty days had not elapsed and the assessment had not been made, the case would have been within the exception, because the duty would have accrued against him. The right to the duty would have become absolute; the rate of duty would have become fixed; and the person liable to pay it would have been determined.

The evident intention of this exception was to provide for levying and collecting such sums as should have been assessed before Oct. 1, 1870, and such duties as before that time had accrued against any particular person, where, as against him, the right had accrued and become absolute, although the assessment had not been made. The expression used in section 134, "but such duty shall be at the highest rate, which, if every successor had been subject to duty, would have been payable by any one of them," recognizes the fact that only that successor was subject to duty who entered into possession. The definition of a succession in section 127, making it embrace interests "in expectancy," does not aid in the construction of this excepting clause, as it could not for a moment be contended that a duty accrued against one having only a contingent interest. In sections 125 and 128 the duty is referred to as accruing at the time of the final ascertainment of the tax, and the interest in the succession as accruing when the successor is entitled to possession. As the act of 1870 provided that taxes upon real or personal estate which may by any disposition become subject to trusts for charitable purposes are repealed, and no such taxes, whether already levied or not, shall thereafter be collected, the plaintiff might have disposed of his interest before the termination of the life estate, by a conveyance in trust for charitable purposes, so that no tax would have been payable upon it. A duty could not have accrued as against him, when it was in his power so to dispose of the estate that no duty would ever be payable upon that succession.

The case of May v. Slack [supra] was a case where the testator died in February, 1870, having made by will certain pecuniary legacies, which were paid by his executors in April, 1871. It is plain that the duty had accrued on these legacies, because they were then absolutely due to the specific legatees. The legacy was debitum in praesenti, even if it was solvendum in futuro. The amount was fixed; the rate was determined; the person ascertained who was to receive the legacy; the person ascertained who was to pay the duty. No one of these elements exists in this case, and the case before the court cannot fall within the rule or the reasoning in the opinion in that case. If the duty in this case was rightly assessed, then it follows that it would be necessary to continue the whole machinery of the internal revenue system to assess and collect duties upon remainders, whenever, after the lapse of years, the life estate determines. It is clear, from the general policy of the statute, that the excepting clause was never designed to have that effect.

Judgment for plaintiff for six hundred dollars, with interest from May 31, 1873.

[This judgment was affirmed by the supreme court, in writ of error. 94 U. S. 589.]